Don GLASSER and George Doerner,
Petitioners,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

American Federation of Musicians,
Intervenor.

Nos. 282–285, Dockets 31910–31913.

United States Court of Appeals
Second Circuit.

Argued Feb. 19, 1968.

Decided May 13, 1968.

———◆———

Godfrey P. Schmidt, New York City,
for petitioners.

Michael N. Sohn, Washington, D. C.
(Arnold Ordman, General Counsel, Dom-
inick Manoli, Associate General Counsel,

Marcel Mallet-Prevost, Asst. General Counsel, Gregory L. Hellrung, Washington, D. C., Attorney), for respondent.

Henry Kaiser, Ronald Rosenberg, George B. Driesen, Washington, D. C., Emanuel Dannett, Jacob Silverman, New York City, for intervenor.

Before FRIENDLY and SMITH, Circuit Judges, and GIGNOUX, District Judge.*

GIGNOUX, District Judge:

Don Glasser and George Doerner, orchestra leaders and members of the American Federation of Musicians, petition for review of a decision and order of the National Labor Relations Board dismissing portions of an unfair labor practice complaint which had issued upon petitioners' charges.[1] Their petition presents three questions: (1) whether the Federation violated Sections 8(b) (1) (A) and 8(b) (2) of the National Labor Relations Act, as amended, 29 U.S.C. § 151 et seq. (1964), by processing charges filed by its member locals against petitioners for alleged violations of Federation bylaws requiring orchestra leaders to employ only Federation members in good standing; (2) whether the Board erred in failing to issue a remedial order against the Federation's Local 80 on its finding that Local 80 was guilty of an unfair labor practice by filing such a charge against petitioner Doerner; (3) whether the Federation is in violation of the above-mentioned statutory provisions by maintaining and enforcing bylaws which prohibit Federation members from playing with non-members.

Section 8(b) of the Act provides in pertinent part:

> It shall be an unfair labor practice for a labor organization or its agents—
> (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: *Provided*, that this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; * * *
>
> (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) * * *.[2]

Petitioners Glasser and Doerner are engaged in the business of providing musical entertainment at dances, parties, nightclubs, banquets and similar occasions, primarily on a "single engagement" basis.[3] Like most orchestra leaders in the United States, they are members of the Federation, the membership of which is composed of both orchestra leaders and performing musicians.

At the time of the events here involved,[4] the bylaws of the Federation contained the following provisions:

> Article 13, Section 5. A member of the Federation cannot play with sus-

---

* Of the District of Maine, sitting by designation.

1. The decision and order of the Board is printed at 165 NLRB No. 110 (June 22, 1967).

2. The relevant provisions of Sections 7 and 8(a) (3) of the Act are:
Sec. 7. Employees shall have the right to * * * engage in * * * concerted activities * * *, and shall also have the right to refrain from any or all of such activities * * *.
Sec. 8(a) It shall be an unfair labor practice for an employer * * *
(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *.

3. A "single engagement" is defined in the Federation's bylaws as an engagement of less than one week. An engagement of one week or more is a "steady engagement."

4. At the 1966 annual convention of the Federation, held on or about June 27, 1966, Article 16 of the bylaws, infra, was amended by deleting the last sentence of Section 4 and by adding to Section 3 the following:
This by-law shall not be applicable where the leader is an employer subject to the jurisdiction of the National Labor Relations Board.
No change was made in Article 13, Section 5.

pended or expelled members or with nonmembers in the jurisdiction of a local or of the Federation on competitive engagements unless it be with the consent of the Federation or in cases wherein the laws of the Federation provide otherwise.

Article 16, Section 3. Leaders of orchestras or bands playing traveling engagements shall only employ members who are in good standing in the Federation. Any person performing with an orchestra is prohibited from using any kind of contraption or device that lends background rhythm to the rendition of an orchestra, unless he or she holds a membership card in the American Federation of Musicians. A fine of not less than $10.00 nor more than $500.00 shall be imposed for each violation.

Article 16, Section 4. A member to be in good standing must produce a membership card or receipt showing payment of the current quarterly dues in the local in which he holds membership. If a member cannot produce a membership card or a receipt for the current quarterly dues, he must in addition to his arrearage in dues pay a fee of $5.00 to place himself in good standing. Leaders of traveling orchestras or bands shall be responsible for failure of sidemen to abide by this law and shall be fined $10.00 for each violation thereof.

Sanctions for violations of these bylaws are invoked by the Federation's Executive Board.[5]

The events that led to the present controversy may be briefly stated. In February 1965, petitioner Glasser and his orchestra were playing at a ballroom in Edelstein, Illinois, when a representative of the Federation's Peoria local "checked the cards" of Glasser's musicians and informed him that four of them did not have union cards. Subsequently, the Peoria local filed charges against Glasser alleging violation of Article 16, Section 4 of the bylaws. On August 19, 1965, these charges were dismissed by the Executive Board of the Federation. In May 1965, at Concordia, Kansas, Glasser hired a substitute musician who was not a member in good standing of the Federation's Salina local, which had jurisdiction in the area. Charges were filed by the local alleging that Glasser had violated Article 16, Sections 3 and 4 of the bylaws. On January 31, 1966, the Executive Board also dismissed these charges.

In November 1964 petitioner Doerner and his orchestra played at an Air Force noncommissioned Officers Club in Salina, Kansas. Subsequently, the Salina local filed charges against Doerner alleging that the Club was on the Federation "unfair list," and also that two members of Doerner's orchestra were not in good standing with the Federation. On January 25, 1966, the Executive Board dismissed these charges. In September 1965, while Doerner and his orchestra were playing an engagement in Chattanooga, Tennessee, one of his musicians was unable to produce a union card at a "card check" by a representative of the Federation's Local 80. Local 80 then filed charges with the Federation alleging that Doerner had violated Article 16, Section 4 of the bylaws. On April

---

5. All cases brought before the Federation's Executive Board are filed with and processed by the Office of the Secretary of the Federation, which includes approximately 20 clerks who work on the processing. When a written charge is filed, a clerk acknowledges its receipt, and prepares an index card and case folder. A copy of the charge is then forwarded to the party charged, together with a form letter requesting a reply within 14 days and advising of the opportunity for a hearing. Upon receipt of the reply, the charging party is given an opportunity to file a written rebuttal and the party charged is then given an opportunity for sur-rebuttal. Thereafter, copies of the entire file are sent to each of the nine members of the Executive Board. Each Board member votes whether to sustain or dismiss the charge, the ultimate decision being made by majority vote. Unless a hearing has been requested, the Board members normally vote by mail. The Executive Board handles over 1,000 charges a year.

26, 1966 the Secretary of the Federation notified Doerner that the Executive Board had dismissed these charges.

Following these events, petitioners filed unfair labor practice charges against the Federation and Local 80, alleging violations of Sections 8(b) (1) (A) and 8(b) (2) of the Act. A consolidated complaint issued, and after hearing, a National Labor Relations Board trial examiner found that the Federation had violated these statutory provisions by maintaining and enforcing Article 13, Section 5 and Article 16, Sections 3 and 4 of its bylaws against orchestra leaders who were employers subject to the Act. The Board adopted this finding and issued an order directing the Federation to cease and desist from maintaining and operating under these bylaws as applied to orchestra leaders when acting as employers subject to the Board's jurisdiction. It also directed the Federation to take affirmative action to notify its members and locals that orchestra leaders subject to Board jurisdiction are not subject to bylaws which preclude leaders from employing or playing with non-members. The Federation has complied with the Board's order, and does not here dispute the correctness of the finding upon which it is based.

However, the trial examiner also found that the Federation had not violated Sections 8(b) (1) (A) and 8(b) (2) by processing the charges filed against petitioners under its bylaws, and that it was not in violation of these sections by maintaining and enforcing Article 13, Section 5 of its bylaws as applied to employee members of the Federation. Assuming, but not finding, that Local 80 had violated Sections 8(b) (1) (A) and 8(b) (2) by filing a charge against Doerner under Article 16, Section 4 of the bylaws, the trial examiner nevertheless concluded

that it would serve no useful purpose to issue a remedial order against Local 80. The Board adopted, with one slight modification,[6] the trial examiner's findings and conclusions and entered an order dismissing the complaint as to these latter issues. We find no error in the Board's action.

### 1. Processing of Intra-Federation Charges

It is conceded by all parties that petitioners as employers subject to the Act are prohibited by Section 8(a) (3) and (1) of the Act from discriminating against or refusing to hire an employee because of his lack of Federation membership. It is also not disputed that if the Federation attempted to cause such employer discrimination, it would be guilty of an unfair labor practice by reason of Sections 8(b) (1) (A) and 8(b) (2) of the Act. See, e. g., NLRB v. Local No. 2 of United Ass'n of Journeymen, etc., 360 F.2d 428 (2d Cir. 1966); United Nuclear Corp. v. NLRB, 340 F.2d 133 (1st Cir. 1965). The question here, however, is whether the mere processing and consideration of intra-Federation charges against an employer member, apart from the instigation of such charges and apart from the imposition of any sort of sanctions upon the charges, is an attempt to cause employer discrimination prohibited by the above-mentioned sections of the Act. Petitioners urge that it is such an attempt. We come quickly to the opposite conclusion. The processing of charges is no more than a series of ministerial steps taken in the office of the Secretary of the Federation in order to prepare the charges for decision by the Executive Board. Similarly, in its consideration of charges against members, the Executive Board, acting in a quasi-judicial capacity, merely passes on the issues brought before it for the purpose of determining

---

6. Chairman McCulloch and Member Zagoria were of the view that Local 80 had committed an unfair labor practice by instigating a charge under Article 16, Section 4 against Doerner. However, they agreed with the trial examiner that it would not effectuate the purposes of the

Act to issue a remedial order with respect to this violation. Member Fanning felt that under the circumstances of this case the mere filing of the charge by Local 80 was not an attempt to cause discrimination within the meaning of the Act. See 165 NLRB No. 110, n. 1.

whether the party charged is guilty of a bylaw violation. There is no Federation action directed at the employer until an attempt is made to enforce a fine or other penalty imposed pursuant to an Executive Board decision sustaining a charge. Nor is there any evidence in the record before us that the Federation sought to utilize the processing machinery as a weapon to harass petitioners; in fact, it appears that the charges against petitioners were dismissed when it became clear that they could not lawfully be sustained.[7] The Federation is entitled to maintain machinery to process and determine the merits of charges filed against its members, and there is nothing inherently coercive about the procedure it has used. Under these circumstances, even though an incidental effect of the pendency of the charges may have been to inhibit the employment by petitioners of non-Federation musicians, we cannot say that the mere clerical act of processing a charge and the decisional act of determining its merit constitute proscribed activity. As the examiner concluded, "if there is illegality in the bylaws, this is a matter to be dealt with in a direct attack on the bylaws. * * *" 165 NLRB No. 110, at ——.

### 2. *Remedial Order Against Local 80*

█ Petitioners contend that the Board erred in failing to issue a remedial

order against Local 80 upon its finding[8] that Local 80 had been guilty of an unfair labor practice by filing a charge against petitioner Doerner under Article 16, Section 4. However, as this Court has noted, "the Supreme Court has repeatedly asserted the Board's broad discretion to fashion remedies based on its acquaintance with the situation at hand and its experience in promoting industrial peace. E. g., NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953); Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941)." Amalgamated Clothing Workers of America, AFL–CIO v. NLRB, 345 F.2d 264, 268 (2d Cir. 1965). In view of the remedial order issued by the Board against the Federation and the fact that prior to the hearing before the trial examiner the Federation had amended the bylaw under which Local 80 filed the charge, we do not find that the Board abused its discretion in not issuing a specific order against Local 80.

### 3. *The Bylaws as Applied to Employee Members*

█ The Board held that the Federation did not violate Sections 8(b) (1) (A) and 8(b) (2) of the Act by maintaining and enforcing Article 13, Section 5 of its bylaws to penalize employee members of the Federation for working with nonmembers.[9] Petitioners urge that the

---

7. It is conceded that although petitioners are employers subject to the Act, there may well be other orchestra leaders, members of the Federation, who are not subject to the jurisdiction of the National Labor Relations Board and against whom such charges could be lawfully maintained.

8. See n. 6, supra.

9. At the hearing before the trial examiner the General Counsel stated that he intended the complaint to apply only to bylaws of the Federation as they affected "member employers." However, counsel for petitioners there urged that the complaint should be read so as to include an attack on Article 13, Section 5 as applied to member employees. The trial examiner permitted petitioners' counsel to develop their argument that the mainte-

nance and enforcement of Article 13, Section 5, as applied to employee members was a violation of the Act. He found against petitioners on this issue and his findings were adopted by the Board. The Federation here suggests that the issue is not properly before this Court because the General Counsel, in whom is vested complete authority over the initiation and maintenance of unfair labor practice complaints, had expressly declined to litigate the issue. See Section 3(d) of the Act; International Union of Electrical, Radio and Machine Workers v. NLRB, 110 U.S. App.D.C. 91, 289 F.2d 757, 760 (1960); Wellington Mill Division, West Point Mfg. Co. v. NLRB, 330 F.2d 579, 590–591 (4th Cir. 1964). However, at least in the absence of objection by the General Counsel, the trial examiner had discretion to allow petitioners as the charging parties

mere existence of this bylaw constitutes an attempt "to restrain or coerce \* \* \* employees" in violation of Section 8(b) (1) (A), as well as "an attempt to cause an employer to discriminate" in violation of Section 8(b) (2).

■ So far as Section 8(b) (1) (A) is concerned, we agree with the Board that the enforcement of this bylaw as against employee members of the Federation, even if restraint or coercion within the meaning of the statute, is nevertheless excepted from its prohibitions by the proviso that such prohibitions "shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein \* \* \*." It was expressly so held with respect to a substantially identical bylaw in American Newspaper Publishers Ass'n v. NLRB, 193 F.2d 782, 787, 800–801 (7th Cir. 1951). See also Scofield v. NLRB, 393 F.2d 49 (7th Cir. March 5, 1968). And in NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967), the Supreme Court has very recently held that Section 8(b) (1) (A) did not prevent a union from seeking court enforcement of fines levied against members who crossed the union's picket line during an authorized strike against their employer. In so ruling, the Court concluded that Congress, in enacting Section 8(b) (1) (A), did not intend "to interfere with union self-government or to regulate a union's internal affairs." Id. at 184, 87 S.Ct. at 2009. In light of the Supreme Court's construction of Section 8(b) (1) (A) in *Allis-Chalmers*, we conclude that the bylaw here in question is protected by the proviso to that section.

■■ The question under Section 8 (b) (2) is somewhat more difficult. Al-

though the bylaw is directed solely at employee-members of the Federation, it seems likely that its existence has a substantial "chilling effect" on any tendency of an employer-member to hire a non-member musician. However, in order for union conduct to violate Section 8(b) (2), as opposed to Section 8(b) (1) (A), there must be some direct approach to the employer, or some conduct aimed at him, for the purpose of causing the employer to discriminate by implementing the union bylaw through his hiring practices or otherwise. See NLRB v. Local 2 of United Ass'n of Journeymen, etc., supra; United Nuclear Corp. v. NLRB, supra. Undoubtedly, petitioners as union members have been acutely aware of the bylaw's existence and of the rigorousness of enforcement within the Federation. However, on the present record the Board was free to find that petitioners have not shown any pattern of action by the Federation aimed at them as employers. The Board's finding on this point is supported by substantial evidence and its conclusion that no violation of Section 8(b) (2) is present should not be disturbed.

In summary, we hold that: (1) the processing of intra-Federation charges against petitioners was not an unfair labor practice under Sections 8(b) (1) (A) and 8(b) (2) of the Act; (2) the Board's refusal to issue a remedial order against Local 80 was not an abuse of its discretion; and (3) there was no error in the Board's determination that the Federation has not violated Sections 8(b) (1) (A) and 8(b) (2) of the Act by maintaining and enforcing bylaws penalizing employee-members for playing with non-members.

The petition for review is denied.

---

to introduce their theories at the hearing and to rule on their contentions. See In-

ternational Union of Electrical Radio and Machine Workers v. NLRB, supra.