**UNITED NUCLEAR CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 6403.**

United States Court of Appeals First Circuit.

Heard Jan. 5, 1965.

Decided Jan. 18, 1965.

John J. Delaney, Jr., Boston, Mass., with whom John A. Canavan, Jr., Gordon P. Ramsey, and Nutter, McClennen & Fish, Boston, Mass., were on brief, for petitioner.

Warren M. Davison, Atty., Washington, D. C., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Herman M. Levy, Atty., Washington, D. C., were on brief, for respondent.

Before ALDRICH, Chief Judge, and SWEENEY and WYZANSKI, District Judges.

WYZANSKI, District Judge.

The ultimate question in this case is whether in view of the terms of a *specific "maintenance-of-membership" clause* in a collective bargaining contract, and a *specific Union constitution,* an employee who had paid Union initiation fees, attended Union meetings, and voted there, but has not, as required by the Union's constitution, complied with its conditions precedent for full Union membership, such as approval by a majority of the members, formal initiation, and subscription to an oath, is an employee whose discharge from employment the Union, in the light of § 8(b) (2) of the N.L.R. Act, may lawfully demand on the ground that he has not paid Union dues and thus allegedly not remained a member in good standing.

The case comes on United Nuclear Corporation's petition to review and set aside the August 28, 1964 order of the

NLRB adopting, with a minor change, the May 15, 1964 recommended order of its Trial Examiner.

The uncontradicted facts follow.

In the words of the Trial Examiner's unchallenged finding, Oil, Chemical, and Atomic Workers International Union's "constitution sets forth a detailed series of steps for achieving membership (such as approval of an application by a majority of the membership, formal initiation and oath of membership to be taken by a 'successful' applicant)."

By informal custom, the Union on payment of an initiation fee of $5 extended certain rights of membership, including, on occasion, attendance at meetings and voting thereat.

50 United employees, whose status is in question, each paid $5 to an officer or steward of the Union. For that payment, each received an "initiation fee receipt" which indicated that dues were for that month paid and that the next dues would be owing for the month immediately following certification. Some of the 50 who received such receipts thereafter attended Union meetings and voted at them. None of the 50 had his application approved by a majority of the membership, was formally initiated, or took the oath of membership.

On February 12, 1963 the International Union and its Local 8–718 entered into a collective bargaining contract, effective February 11, 1963, with United. One article of that contract contained the following maintenance-of-membership provision:

> "Any employee who is a member in good standing of the Union as of the date of this agreement or who thereafter voluntarily joins the Union during the term of this agreement shall remain a member of the Union in good standing as a condition of employment by the Company. For the purpose of this article, an employee shall be considered a member of the Union in good standing if he tenders the periodic dues and the initiation fees uni-formly required as a condition of employment."

In April 1963 the Union notified the 50 employees here in issue that they were then in arrears in dues and accordingly no longer in "good standing."

The Local demanded that United discharge these 50; and on August 27, 1963 filed with United, under the arbitral provisions of the contract, a grievance concerning United's failure to accede to the Local's demand. After investigation, United declined to acquiesce in the demand.

Following United's charges appropriately filed with the NLRB, its General Counsel complained to the Board that the Union had violated § 8(b) (1) (A), (2) of the N.L.R. Act as a result of the Union's filing of a grievance because of United's refusal to make the payment of dues by the 50 a condition of their continued employment. The matter was, as usual, first assigned to a Trial Examiner.

After taking testimony, the Trial Examiner found that at least some of the 50 employees had participated in Union meetings and votes, that a representative of the Union had acquiesced in treating all 50 as members, that they were estopped to deny their membership, and that it followed that they had become members of the Union. The Examiner, despite evidence on the subject, refused to make any finding or reach any conclusion or recommendation on the issue whether the Union had violated § 8(b) (1) (A), (2) of the Act by filing a grievance under the arbitral provisions of the contract.

As already observed, the Board in its order followed its Trial Examiner.

United's petition in this Court prays that this Court set aside the Board's order insofar as it (1) fails to find that the Union committed an unfair labor practice under § 8(b) (1) (A), (2) of the Act by filing a grievance to compel United to violate § 8(a) (3) of the Act and fails to order the Union to desist from such action; and (2) fails to find

that the Union violated § 8(b) (1) (A), (2) of the Act by demanding payment of dues as a condition of employment of the 50 employees here in issue, and fails to direct the Union to rescind such demand.

For the following reasons we grant the petition and remand the case to the Board with directions to make such findings and such modifications of its Order as may be necessary or appropriate to fulfill *in toto* the petitioner's prayer, as summarized in the previous paragraph.

In the specific contract on February 12, 1963 United and the Union framed the article with the so-called maintenance-of-membership provision so as to make one of the critical and indispensable tests the issue whether a particular employee whose status might be affected by the invocation of the article was indeed in the full sense a "member * * of the Union."

There was no hint in the words of the contract, nor for that matter (so far as appears) in the preliminary negotiations, (if, on the theory of the supposed ambiguity of the contract, evidence of such preliminary negotiations might be admissible as an exception to the parol evidence rule,) that the word "member" was used in an esoteric sense. It appears that the parties used words clearly expressing an intent to determine membership by familiar, customary, orthodox standards. Nor is this appearance contradicted by the second sentence of the article, (quoted earlier in this opinion).

In that second sentence the parties did not attempt to define a "member" *simpliciter*, but addressed their attention only to the delineation of when a member should be "considered * * * in good standing." That is, only after someone had been properly classified as a "member" did the parties concern themselves as to whether he also belonged in the sub-class of "members in good standing."

■ Ordinarily (and, of course, not taking into account presently irrelevant situations, such as the power of Congress to define membership in an organization as including affiliated persons who display an active interest in its purposes and performances,)* the test for determining whether a given person is a member of an organization is internal to that organization.

No doubt, some organizations have various classes of members, including, in some instances, probationary members or members designated by an officer or committee authorized by the organization to act for it,—even to act for it in ways different from those which the organization's constitutional provisions make applicable to the generality of persons.

But in the case at bar the Union constitution clearly requires for membership approval of a majority of the members, formal initiation, and subscription to an oath. Neither the Union constitution nor any less formal act of the entire

---

* By italicizing in the first paragraph of this opinion references to the specific contract and specific constitution present in the case at bar, this Court has avoided, as did the NLRB itself, the thorny question as to the meaning of the term "membership" as used throughout § 8 and elsewhere in the NLR Act. We may, by way purely of hypothesis, suppose that the NLRB has at least wide discretion, based on its expertise, to interpret the statute so as to construe "membership" as used therein as a concept embracing not merely technical full-fledged membership but also affiliation or adherence which have been recognized, either by estoppel or otherwise, by both the union and the employee (and not necessarily by the employer). Such an interpretation might be based on the concepts underlying the statute which might be thought to include a generous Congressional intention to support so-called modified closed shops whenever a particular employee affected had shown a disposition toward that end. But even if the foregoing hypothetical construction of the Act should be adopted by the NLRB and should withstand judicial review, that would be irrelevant to the case at bar. For even if the Union here and United had the power to make a contract including in the maintenance-of-membership provision non-members of the Union who were closely affiliated with the Union, they did not in fact so contract on February 12, 1963.

body of the members has provided for either special classes of members who have paid initiation fees, or for special classes of members admitted in the discretion of executive officers or committees.

Hence, even if it be true that some Union officers did treat some or all of the 50 as members, they could not become members by estoppel, as the Trial Examiner ruled. The officers acted *ultra vires* and could not by their own action create members in ways not authorized by the body of the membership or by the constitution it had adopted.

Nor in determining membership in the Union is there the significance which the Trial Examiner read into the fact that some (not all) of the 50 had attended union meetings and voted. This conduct did not, as the Trial Examiner assumed, bear the unquestioned hallmark of genuine membership. There is a well-recognized distinction between membership, on the one hand, and, on the other hand, the privilege accorded to non-members of exercising certain rights usually associated with membership. Many organizations distinguish between initiated members and persons elected to membership who have paid initiation fees but who have not yet been incorporated in the body. Indeed, an extreme example, not without some relevance, is the now obsolete pattern of some Western States of the United States in establishing a common voting roll for citizens and also for aliens who had declared their intention to become citizens.

In short, unless a statute or special rule of law otherwise provides, the fact of voting is not an automatic proof of membership. And we know of no applicable statute, rule of law, or custom equivalent to law which in labor unions homogenizes candidates for members who have paid initiation fees, participated in meetings, and been allowed to vote with members who have actually been initiated, admitted, and completed all formalities. Nor does the Board suggest that there is any such rule, statutory, decisional, or customary.

Therefore, on the record in this case only one finding and one conclusion respecting the 50 employees' status could properly have been made: they never were members of the Union. This finding and this conclusion were compelled not only by the evidence but also by the pleadings. They were a finding and a conclusion for which United asked, to which in justice it was entitled, and on which depended its warranted claim for relief.

If it had been determined, as it should have been, that none of the 50 was ever a member of the Union, of course, it would have followed as a matter of law that United would have violated § 8(a) (3) of the Act had it discharged any of the 50 for not paying Union dues; that the Union did violate § 8(b) (1) (A), (2) of the Act in seeking to cause United to effectuate such discharges (NLRB v. International Union, United AAA Imp. Wkrs., 1st Cir., 297 F.2d 272, 274); and that the Union did violate § 8(b) (1) (A), (2) of the Act in seeking to present as an arbitral grievance United's refusal to effectuate such discharges. After such conclusions of law it would then clearly have been the Board's obligation to grant United the preclusive relief which United sought, to protect it from the duplicative attempted arbitration proceedings. Cf. Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320.

Nothing in this opinion is to be construed as ordering relief beyond the scope of the amended complaint.

An order will be entered vacating the decision of the Board to the extent inconsistent with this opinion and directing further proceedings consistent herewith.