Jane **AGOLA**, et al., **Plaintiffs,**

v.

William L. **HAGNER**, **individually and as President of Local 803, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 803, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants.**

No. CV 82–0013.

United States District Court, E.D. New York.

June 15, 1987.

---

Clifton & Schwartz, New York City, for plaintiffs.

Cohen, Weiss & Simon, New York City, for defendants William Hagner and Local 803.

Gary S. Witlen, Washington, D.C., for defendant Intern. Broth. of Teamsters.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Plaintiffs bring this motion under Fed.R. Civ.P. 59 for a new trial and for amendment of judgment so as to award attorneys fees and costs pursuant to Fed.R.Civ.P. 68. Plaintiffs seek reconsideration of the court's determinations made in a Memorandum of Decision and Order dated August 19, 1986,[1] which found that plaintiffs were not members of union Local 803 of the International Brotherhood of Teamsters ("Local 803" or "Local") and that plaintiffs failed to comply with pre-conditions required by the union for the receipt of strike benefits. Plaintiffs also seek costs for the defense of defendants' counterclaims based on an offer of judgment which plaintiffs made and defendants rejected before the counterclaims were dismissed by this court.

---

**1.** *Agola v. Hagner,* CV-82-0013, Memorandum of Decision and Order (E.D.N.Y. August 19, 1986) (unpublished opinion).

Plaintiffs, a group of seventy-eight (78) registered nurses of the Brunswick Hospital Center ("Brunswick"), had brought suit against the International Brotherhood of Teamsters ("IBT"), Local 803 and William Hagner, President of Local 803 ("Hagner"), claiming, *inter alia*, that defendants had wrongfully abandoned them and expelled them from the union during a strike, and had improperly withheld strike benefits. Defendants asserted counterclaims based on alleged unauthorized solicitation of funds by the nurses in the name of Local 803 and their unauthorized use of the Local 803 logo.

In a Memorandum of Decision and Order dated August 19, 1986, we dismissed plaintiffs' complaint and defendants' counterclaims after a five day non-jury trial. The facts of the case were set out at great length and need not be repeated here, as familiarity is assumed.

Plaintiffs seek a new trial on the grounds that the court erred in concluding that they had failed to meet all the requirements for membership in the union and that they had failed to fulfill the necessary terms and conditions precedent to receiving strike benefits. Defendants oppose the motion for a new trial on the grounds that the motion under Rule 59 Fed.R.Civ.P. (a) is untimely and (b) fails to set forth errors of law or fact, or newly discovered evidence that the court has not considered.

*Timeliness of Plaintiffs' Motion for New Trial*

Rule 59(b) of the Fed.R.Civ.P. provides that "[a] motion for a new trial shall be served not later than 10 days after entry of the judgment." Judgment was entered in this action on August 22, 1986 and plaintiffs' motion was filed and served on September 18, 1986. Even excluding weekends and holidays in computing the time for filing the motion, as provided in Rule 6(a) Fed.R.Civ.P., it is clear that plaintiffs exceeded the time limit. *See Bailey v. Sharp*, 782 F.2d 1366, 1367–68 (7th Cir. 1986). Rule 6(b) Fed.R.Civ.P. states that a court "may not extend the time for taking any action under Rules ... 59(b), (d) and (e), except to the extent and under the

conditions stated in them." Rule 59 makes no provision for extensions of time for filing a motion. It seems clear that the time limit provision in Rule 6(b) is "mandatory and jurisdictional" and cannot be enlarged or circumvented at the discretion of the district court. *See United States v. Robinson*, 361 U.S. 220, 228–29, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960); *Marane, Inc. v. McDonald's Corp.*, 755 F.2d 106, 111 (7th Cir.1985); *Glass v. Seaboard Coast Line Railroad Co.*, 714 F.2d 1107, 1109 (11th Cir.1983); *de la Fuente v. Central Electric Cooperative, Inc.*, 703 F.2d 63, 65 (3d Cir. 1983); *Tarlton v. Exxon*, 688 F.2d 973, 977 (5th Cir.1982) *cert. denied*, 463 U.S. 1206, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); *Lapiczak v. Zaist*, 451 F.2d 79, 80 (2d Cir. 1971) (court's order for a new trial on its own initiative untimely where not within the 10–day limit).

Plaintiffs contend, however, that the delayed filing of their motion was in reliance on the court's grant of an extension of the time for filing all post-trial motions. Plaintiffs point to their letter to the court dated September 3, 1986 which requested

"an extension to file a motion for a new trial and a motion to amend judgment (so as to award costs and attorney's fees under Rule 58 of the Federal Rules of Civil Procedure) through September 18, 1986."

The court granted the "request to extend the time for filing all motions to September 18."

██ Although the court neither intended nor expressly provided for an extension of the 10 day time limit specifically for a motion under Rule 59, it is understandable that plaintiffs may have misinterpreted the court's response and relied on it to their detriment. In similar situations, an "equitable exception" has been recognized by some courts, allowing a motion for a new trial to be heard where there are "unique circumstances" created when a plaintiff relied on the district court's permission, albeit erroneous, to file within an extended time period. *See Eady v. Foerder*, 381 F.2d 980, 981 (7th Cir.1967); *cf. Bailey v. Sharp*, 782 F.2d 1366, 1368 (7th Cir.1986)

(The court construed *Eady* narrowly and declined to apply "unique circumstances" exception where attorney clearly knew of the 10–day time limit of Rule 59); *see also, Cohen v. Tenney Corp.*, 318 F.Supp. 280, 283 (S.D.N.Y.1970) (Motion under Rule 59 was not untimely where court specifically permitted enlargement of 10 day period and movant complied); 4 C. Wright & A. Miller, Federal Practice & Procedure § 1168 (1969).[2]

Alternatively, plaintiffs argue that their letter of September 3, 1986 should operate as a motion under Rule 59 since it was served within the time limit specified by Rules 59(b) and 6(b). Whether under the theory of the unique circumstances exception or on the basis of plaintiffs' letter construed as a motion, we find plaintiffs' motion for a new trial timely and turn now to the merits of the motion.[3]

*Grounds for Motion for New Trial*

■ Defendants argue that plaintiffs fail to satisfy the grounds for a new trial under Rule 59(a)(2). Three grounds have been recognized in non-jury cases as a basis for granting a new trial: 1) manifest errors of law, 2) manifest errors of fact and 3) newly discovered evidence. *Brown v. Wright*, 588 F.2d 708, 709 (9th Cir.1978); *St. Clair v. Pipal*, 611 F.Supp. 911, 915 (E.D.Wis. 1985); *Johnson v. Heckler*, 607 F.Supp. 875, 877 (N.D.Ill.1984); *Consolidated Data Terminals v. Applied Digital Data Systems, Inc.*, 512 F.Supp. 581, 588 (N.D.Cal. 1981), *modified on other grounds*, 708 F.2d 385 (9th Cir.1983). Plaintiffs concede that they base their motion not on a misinterpretation of the law or newly discovered evidence, but only on their assertion that "critical findings [by the court] lack factual support." (Plaintiffs' Reply Memorandum of Law at 4.) Yet, plaintiffs fail to point to any facts that the court has overlooked or

misconstrued. Indeed, in reaching its conclusions, the court carefully considered the very facts the plaintiffs refer to. Plaintiffs simply argue that the facts ought to lead the court to a different conclusion "to avoid a miscarriage of justice." (*Id.* at 5). A motion under Rule 59 is not intended merely to relitigate old matters already considered or give a disappointed litigant another chance. *Illinois Central Gulf Railroad Co. v. Tabor Grain Co.*, 488 F.Supp. 110, 122 (N.D.Ill.1980). Plaintiffs here are seeking reconsideration of the cumulative evidence and theories already considered by the court, and present no controlling law or facts that would compel the court to change the outcome of the action. *See Ionian Shipping Co. v. Tyson Shipping Co.*, 49 F.R.D. 334, 337 (S.D.N.Y.1969).

*Plaintiffs' Union Membership Status*

Plaintiffs argue that they met all the requirements for membership in Local 803 to the extent such requirements were not waived. They concede that no initiation fees or membership dues were paid, but argue that such were waived by the Local during the union organizing campaign. They point to a letter from the union captioned "Dear Member", as well as to plaintiffs' receipt of union "membership" cards and the Teamsters magazine, and to the strike itself as evidence that the union local recognized and treated the plaintiffs as "members." They argue that Local 803 and the IBT ratified the treatment that local union officials accorded to plaintiffs, and thus should be estopped from disclaiming membership status now.

■ Each of these contentions was addressed and rejected by the court in our prior decision of August 19, 1986. We found that although the plaintiffs became

---

**2.** Other courts have recognized that Rule 59 time limits can be extended, at least in the context of considering the timeliness of an appeal. *See Thompson v. Immigration and Naturalization Service*, 375 U.S. 384, 387, 84 S.Ct. 397, 399, 11 L.Ed.2d 404 (1964); *Wolfsohn v. Hankin*, 376 U.S. 203, 203, 84 S.Ct. 699, 699, 11 L.Ed.2d 636 (1964); *Webb v. Department of Health and Human Services*, 696 F.2d 101, 104–06 (D.C.Cir.1982).

**3.** In their Reply Memorandum of Law, plaintiffs assert that the court may consider their motion for a new trial under Rule 60 Fed.R.Civ.P., which does not impose a 10–day time limit. We need not consider whether plaintiffs fall properly within Rule 60 in light of our determination under Rule 59.

members of the *bargaining unit,*[4] they did not become members of the *union* because they failed to apply for membership or pay initiation fees or dues as required by Local 803's bylaws.[5]

We also found that none of the plaintiffs were employed within the jurisdiction of Local 803. The "employee" status of some of the plaintiffs is not entirely clear. A number of the plaintiffs formally resigned from the Brunswick Hospital Center or secured alternate regular employment and thus cannot be considered "employees" under the National Labor Relations Act ("N.L.R.A."). 29 U.S.C. §§ 151 *et seq.* Section 152(3) of the N.L.R.A. defines "employee" as

> any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment....

29 U.S.C. § 152(3). *See also NLRB v. Murray Products, Inc.,* 584 F.2d 934, 938 (9th Cir.1978); *NLRB v. Hartmann Luggage Co.,* 453 F.2d 178, 182 (6th Cir.1971) ("Striking workers remain employees entitled to protection of national labor laws.") Determining which of the remaining plaintiffs could be considered "employees" would seem to turn on whether the strike was an economic strike or an unfair labor practice strike. *See George Banta Co. v. N.L.R.B.,* 686 F.2d 10, 20–21 (D.C.Cir.1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983); *N.L.R.B. v. Murray Products, Inc., supra,* 584 F.2d at 938.

We need not reach this determination as our conclusion does not turn on the plaintiffs' status as employees.

In our prior decision, we found that the membership cards sent to the plaintiffs[6] were sent in error. Indeed, the "Dear Member" letter that accompanied the cards supports this conclusion. The letter, dated April 14, 1980, refers repeatedly to a signed written contract between the hospital and the union. No such agreement was ever reached, and none was in existence on April 14, 1980. The language of the letter strongly suggests that the letter and cards were prepared in anticipation of successful contract negotiations but were sent out in error, prematurely. At least one other court has found that a "Dear Member" letter sent by a union to employees during an organizing campaign should not be construed literally to denote membership status, but should be viewed as a shorthand form for "incoming member" indicating the anticipation of membership in the future. *See N.L.R.B. v. L.D. McFarland Co.,* 572 F.2d 256, 259 (9th Cir.), *cert. denied,* 439 U.S. 911, 99 S.Ct. 280, 58 L.Ed.2d 257 (1978).

■ Even if we assume, *arguendo,* that Local 803 waived initiation fees as plaintiffs contend, we are not persuaded that the union authorized a waiver of membership *dues.* The Local 803 bylaws do not provide for waiver of dues and no evidence was proferred to indicate that the Local's Executive Board (consisting of seven members) authorized any such waiver.[7]

---

**4.** Employees may be members of a collective bargaining unit without being *union* members. *See Wallace v. International Organization of Masters, Mates and Pilots,* 547 F.Supp. 155, 156 (S.D.N.Y.1982). We also found that plaintiffs were placed on mailing lists to receive Teamsters publications after the union was chosen to represent the nurses as their collective bargaining agent. *Agola v. Hagner, supra,* Memorandum of Decision and Order at 11 (E.D.N.Y. August 19, 1986).

**5.** The bylaws also require that applicants for membership must take an oath at a regular membership meeting after acceptance of their applications and dues, however, we noted that this oath was routinely ignored by the union.

*Agola v. Hagner, supra,* Memorandum of Decision and Order, n. 8.

**6.** We noted in footnote 9 of our prior decision that 12 plaintiffs did not receive membership cards.

**7.** The IBT constitution similarly lacks any provision for waiver of dues. In fact, the IBT constitution provides for automatic suspension of membership status with an immediate cessation of all rights and privileges of membership if dues are in arrears for three months. (Article X, Section 5(c)). Local 803 bylaws require compliance with membership provisions in the IBT constitution. (See Local 803 Bylaws Sec. 5). Thus even assuming *arguendo,* that plaintiffs acquired membership status at the time they

■ We noted in our prior decision that labor organizations are free to establish their own standards and requirements for membership. We do not mean to suggest that waiver of dues by a union is never possible, only that we are not convinced it was available or authorized by the union in this case under its established rules and requirements. The unilateral acts of a union official, which are not in conformity with union protocol, cannot bestow membership on any individual. Thus a notice, dated March 7, 1980, signed by the President of Local 803, William Hagner and his assistant, Charlene Doak, which was distributed during the union's organizing campaign, alluding to "NO DUES" for any nurse until a contract was reached, did not clearly establish that membership dues were actually waived by the Local and that membership status was conferred without any payments.

Furthermore, it is clear that the IBT and the Local did not consider or treat the nurses as members since they paid the striking nurses "Out-of-Work" benefits at the "non-member" rate.[8]

Plaintiffs argue that the president of Local 803 had at least apparent authority, if not actual authority as a union agent, to waive dues and confer membership status upon the plaintiffs, and that Local 803 and the IBT ratified his actions. Thus, they contend, the Local and the IBT should be estopped from disclaiming plaintiffs' membership status now.

Agency theory may well apply to some acts of union officials. *See Rodonich v. House Wreckers Union Local 95*, 817 F.2d 967, 972 (2d Cir.1987) (holding that ratification by a union of disciplinary acts of the local leadership against members would occur if the union affirmed the discipline

with full knowledge that it was part of an overall scheme to suppress dissent in violation of the LMRDA). *See also Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 216–17, 100 S.Ct. 410, 413–14, 62 L.Ed. 2d 394 (1979) (finding that liability under an agency theory also applies to violations of contracts between labor organizations if it is clearly shown that the agent was acting in accordance with the "fundamental agreement of association," but holding international union not responsible for wildcat strike it did not authorize.); *Aguirre v. Automotive Teamsters*, 633 F.2d 168, 170–74 (9th Cir.1980) (union would be liable for acts of officers who infringed voting rights of union members where they acted within scope of authority or where union had knowledge.) However, membership status is a decision of the members of the union, not of individual union officials. Indeed, decisions regarding *dues* are matters rightfully addressed to the membership, rather than to union leaders. *See King v. Randazzo*, 346 F.2d 307, 309 (2d Cir.1965) (dues should be under the direct control of the union membership and should not be imposed on members by mere fiat of the union officers.)

Section 101(a)(1)–(5) of the Labor Management Reporting and Disclosure Act ("LMRDA") sets forth a "bill of rights" for union members which accords equal rights and privileges to all members on all union matters thought to be of special importance. 29 U.S.C. § 411(a)(1)–(5).

> The evident purpose of this bill of rights is to safeguard and preserve actual union democracy. [This section] was 'specifically designed to promote the "full and active participation by the rank and file in the affairs of the union." ' [citations omitted] ... The guaranty of a democratic union organization provided by

---

received membership cards in April 1980 (albeit in error), the passage of three months without payment of dues would have removed all rights of membership by August 1, 1980, well before the November 1980 withdrawal of the union from representing plaintiffs.

**8.** Article XII section 5(e) provided out-of-work benefits to employees who designated the union as their collective bargaining agent in connection with an organizing campaign, even though

the employees had not yet become members of the union. The rate for these "non-member" employees was twenty-five dollars ($25) per week for the first four payments and thirty-five dollars ($35) per week thereafter. The rate is higher for members. This undermines plaintiff's argument that actions by the Local and IBT evidence ratification of plaintiffs' membership status.

[this section] was designed to shield the union membership from arbitrary, autocratic, and despotic control by union officers and leaders.

*Burroughs v. Operating Engineers Local Union No. 3*, 686 F.2d 723, 727 (9th Cir. 1982); *see also Denov v. Chicago Federation of Musicians Local 10–208*, 703 F.2d 1034, 1039 (7th Cir.1983).

■ Plaintiffs have failed to cite any authority that would allow a union official to determine membership qualifications or waive them unilaterally or that would grant membership by estoppel. We stand by our prior conclusion that "[m]embership cannot be conferred by estoppel."[9] *See United Nuclear Corp. v. N.L.R.B.*, 340 F.2d 133, 137 (1st Cir.1965). In *United Nuclear*, the court found that fifty employees, who did not fulfill all requirements of membership including approval by a majority of the members, formal initiation, and subscription to an oath, "could not become members by estoppel," even though they all paid initiation fees and dues and some attended union meetings and voted. *Id.* The court stated that, "The officers acted *ultra vires* and could not by their own action create members in ways not authorized by the body of the membership or by the constitution it had adopted." *Id. See also, Maurer v. U.A.W.*, 487 F.Supp. 731, 738 (M.D.Pa.1979) (estoppel membership can't arise in the absence of a fraudulent purpose).

Courts have consistently held that union membership is not a vested right and arises only when requirements, as set forth in union constitutions and bylaws, are fully satisfied or substantially satisfied even though some ministerial formalities remain to be performed. *See Brennan v. Local 357, International Brotherhood of Teamsters*, 709 F.2d 611, 614 (9th Cir.1983); *Erkins v. Bryan*, 663 F.2d 1048, 1051 (11th Cir.1981), *cert. denied*, 459 U.S. 989, 103

S.Ct. 343, 74 L.Ed.2d 384 (1982); *Alvey v. General Electric Co.*, 622 F.2d 1279, 1284 (7th Cir.1980); *Gavin v. Structural Iron Workers Local No. 1, supra*, 553 F.2d 28 at 30–31; *Moynahan v. Pari–Mutuel Employees Guild*, 317 F.2d 209, 210 (9th Cir.), *cert. denied*, 375 U.S. 911, 84 S.Ct. 207, 11 L.Ed.2d 150 (1963); *Hughes v. Local No. 11, International Association of Bridge, Structural and Ornamental Ironworkers*, 287 F.2d 810, 815, 817 (3d Cir), *cert. denied*, 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961); *Brown v. United Transportation Union*, 573 F.Supp. 22, 25–26 (W.D. Tex.1983); *Wallace v. International Organization of Masters, Mates, and Pilots, supra*, 547 F.Supp. 155, 156–57; *Basilicato v. International Alliance of Theatrical Stage Employees and Moving Motion Picture Machine Operators*, 479 F.Supp. 1232, 1242 (D.Conn.1979), *aff'd mem.*, 628 F.2d 1344 (2d Cir.1980). In this case, membership requirements were not met and far more than ministerial formalities remained to achieve membership.

After considering plaintiffs' arguments once again, we are compelled to reach the same conclusion, i.e., that plaintiffs failed to acquire membership status in Local 803 and are thus precluded from obtaining relief under the LMRDA, *see Gavin v. Structural Iron Workers Local No. 1*, 553 F.2d 28, 30 (7th Cir.1977), as well as under Section 301 of the Labor Management Relations Act. 29 U.S.C. § 185.

Accordingly, plaintiffs' motion for a new trial on their Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth claims is denied and such claims remain dismissed.

*Failure to Receive Strike Benefits*

■ Plaintiffs question the factual basis for the court's conclusion that, although plaintiffs were entitled to strike benefits, they failed to comply with the terms and conditions precedent to receive these benefits.[10] The thrust of plaintiffs' argument is

---

9. *Agola v. Hagner, supra*, at 23 (August 19, 1986).

10. Although plaintiffs allege in their complaint that strike benefits were unpaid from October 1, 1980 through November 27, 1980 (Plaintiffs' Complaint ¶ 13), plaintiffs now claim that benefits were unpaid for the week of September 25, 1980 through November 14, 1980, when Local 803 disclaimed interest in representing plaintiffs. (Plaintiffs' Memorandum in Support of Motion for New Trial at 4–5. Plaintiffs' Supplemental Memorandum at 17).

that the union failed to apprise them of the conditions they were required to satisfy in order to receive benefits. For the weeks prior to September 18, 1980, it is undisputed that plaintiffs were required to sign the requisite strike report form in order to receive their strike benefit checks. It is unreasonable to conclude that plaintiffs were unaware that they were required to continue signing for their checks. The nurses were required to picket at least three times per week in order to qualify for strike benefits. One of the striking nurses was assigned to keep attendance records of the picketing nurses. The attendance list was then submitted to the Local union office and forwarded to the IBT so that checks could be sent to the Local for issuance to the eligible nurses. There was no way for the union to know which nurses were eligible for benefits unless the attendance list was submitted. It is not at all clear that such lists were submitted by the nurses for the period from September 25 through November 14. Prior to November 14, 1980, the checks were brought to the strike location by one of the Local 803 leaders. If a nurse was not present for check distribution he or she was instructed to come to the Local 803 office in New York City. After the union disclaimed interest in representing the nurses, the shop stewards, and all individual nurses who called the Local 803 office were told they had to come to the office to receive and sign for the checks. For more than six months, Local 803 personnel maintained the sum of $970 in strike benefits for distribution to the nurses, however, no one appeared to claim the strike benefit money. The nurses had been informed by the union that future checks would not be forthcoming unless and until prior checks were claimed. After waiting for approximately six months for the eligible nurses to claim their benefit checks, Local 803 returned the unclaimed sum of $970 to the IBT. Plaintiffs have pointed to no additional facts to demonstrate that they complied with the requirements for receiving strike benefits

or to a reasonable justification for their non-compliance. Since we adhere to our finding of non-compliance by plaintiffs with the terms, practice and procedure for receipt of benefits, plaintiffs' first claim is dismissed.

*Motion for Costs*

Plaintiffs seek to amend the judgment [11] so as to award attorneys fees and costs pursuant to Rule 68, Fed.R.Civ.P. It is undisputed that plaintiffs are entitled to costs accrued after June 13, 1985, under Rule 68 based on an offer of judgment on defendants' counterclaims made by plaintiffs. Rule 68 mandates that "the offeree must pay costs incurred after the making of the offer," where an offer of judgment is made more than ten (10) days before trial, and "the judgment finally obtained by the offeree is not more favorable than the offer." In our decision of August 19, 1986, we dismissed defendants' counterclaims. Plaintiffs had offered the sum of $100 as judgment on the counterclaims on June 13, 1985, which offer was rejected by defendants.

■ Although plaintiffs state in their Notice of Motion that they seek "attorney's fees" no reference to attorney's fees is made in their itemized list of expenditures. They list only costs for mailing, Federal Express, messenger service, transcripts, copies of exhibits and a deposition. Costs under Rule 68 generally do not include attorneys fees. *See Fulps v. Springfield,* 715 F.2d 1088, 1095 (6th Cir.1983) (attorneys fees included in costs only where authorized by substantive statute at issue in the litigation); *Quintel Corp. N.V. v. Citibank N.A.,* 606 F.Supp. 898, 915–16 (S.D.N.Y.1985); *Coleman v. McLaren,* 92 F.R.D. 754, 757 (N.D.Ill.1981); *but see Lyons v. Cunningham,* 583 F.Supp. 1147, 1157 (S.D.N.Y.1983) (In appropriate cases costs may be deemed to include prevailing party's attorneys fees in a civil rights action for purposes of Rule 68.)

11. Plaintiffs bring this motion under Rule 59(e). While defendants claim plaintiffs' motion under Rule 59 is improper and time-barred, they con-

cede that the motion for costs is proper under Rule 54(d) or Rule 68.

Defendants concede that plaintiffs are entitled to costs related to their defense of the counterclaims incurred after June 13, 1985, but dispute most of the items listed by plaintiffs.

We find that the cost of $223.90 for the deposition of William Hagner taken on May 27, 1982 was not an expense incurred after the offer of judgment and is thus not a taxable cost under Rule 68. We find that the sum of $298.45 incurred by plaintiffs for postage, Federal Express, and messenger service, is not a taxable cost. *See Wahl v. Carrier Manufacturing Co.,* 511 F.2d 209, 217 (7th Cir.1975); *Hollenbeck v. Falstaff Brewing Corp.,* 605 F.Supp. 421, 439 (E.D.Mo.1984), *aff'd,* 780 F.2d 20 (8th Cir.1985); *Wolfe v. Wolfe,* 570 F.Supp. 826, 828 (D.S.C.1983).

Plaintiffs claim the sum of $701.97 as the cost incurred for copies of trial exhibits, one set of which was provided to defense counsel, plaintiffs' counsel and the court. While plaintiffs are entitled to Exhibit copying costs, *see Litton Systems, Inc. v. American Telephone & Telegraph Co.,* 613 F.Supp. 824, 836 (S.D.N.Y.1985) (costs for copies furnished to court and opposing counsel are compensable), it is not clear that these exhibits were utilized solely for the defense of the counterclaims rather than to prove plaintiffs' own claims. Similarly, we are unable to attribute the cost of transcripts ($1,226.10) solely to the counterclaims. We find, therefore, that approximately 50% of the costs for exhibit copies and transcripts may be attributed to defense of the counterclaims and we tax the sum of $964.03 as costs against defendants pursuant to Rule 68.

Plaintiffs' motion for costs pursuant to Fed.R.Civ.P. 68 is granted in the sum of $964.03 and plaintiffs' motion for a new trial is in all respects denied.

SO ORDERED.