OPINION OF THE COURT
Richard Rivera, J.
NATURE OF THE CASE
In this action, plaintiff Telephone Employees Organization (TEO), Local 1100, Communications Workers of America (CWA), seeks to convert an internal union disciplinary financial sanction of $4,939.20 which it issued against defendant John Woods into a judgment for liquidated damages. The financial sanction was issued on the ground that the defendant crossed a picket line during plaintiff union’s strike, violating a provision of the union’s constitution. Defendant raises various defenses to the claim, one of which is that he was not a member of the union at the time of the strike, and, therefore, that the union’s complaint must be dismissed. The relevant facts are as follows.
RELEVANT FACTS
A. Defendant’s 1986 Union Affiliation
In 1986, defendant John Woods was employed as a telephone operator for AT&T in Westchester County, New York. At that time, AT&T had a collective bargaining agreement with CWA Local 1110 (Local 1110). The parties agree that defendant was a member of Local 1110.

B. 1987 Job Transfer

In 1987, defendant transferred to New York Telephone at a different job site. New York Telephone had a collective bargaining agreement with a different union, the TEO Local 221 (Local 221) which was affiliated with a parent union known as Telecommunications International Union (TIU).
The New York Telephone job site at which defendant worked was a closed union shop which meant that all employ *34 ces had to pay union dues even if they were not formally union members (for nonunion members the "dues” were referred to as an "agency fee”).
On August 4, 1987, soon after arriving at the New York Telephone job site, defendant filled out a "Union Dues Authorization” card which authorized his employer "to deduct from my wages or sickness benefits My membership dues in such amount and in such installments as may be certified by the collective bargaining agent, since I intend to join the union. ” (Emphasis added.) This card also contained a preprinted highlighted caption stating that this card is not a union membership application and is date stamped September 23, 1987 by the employer. In the space provided for defendant to indicate the union to which he currently belonged and to which dues would be paid, however, he wrote in "CWA”, his former union at AT&T.
According to Local 221’s constitution, an employee could only become a union member by completing an application "on a form provided by the Union”. However, the plaintiff union never produced such a Local 221 membership application signed by defendant nor a membership card reflecting defendant’s membership in Local 221. Defendant testified that he was never given these documents. Although defendant acknowledged that he once had a union membership card, he could not remember if it was issued by Local 221 or by his previous union, Local 1110.
A few months after defendant was transferred to New York Telephone, the members of Local 221 there held an affiliation election in which they chose to end their affiliation with TIU and affiliate instead with, ironically, CWA. It is not known whether defendant voted in this election.
This election was certified as completed on November 23, 1987, but the successorship agreement officially acknowledging CWA as the employees’ collective bargaining agent was not signed until January 4, 1989. According to the successorship agreement, CWA assumed "all the rights, responsibilities, obligations and benefits previously undertaken and accepted by the TEO under the [collective bargaining] Agreement”. This would have meant, in part, that CWA inherited Local 221’s existing membership as well. (Communications Workers v Jefferson, 289 NLRB No. 148 [July 26, 1988].)
As a result of the election and the successorship agreement, "TEO Local 221, TIU” became "TEO Local 1100, CWA”. By *35 coincidence, therefore, Mr. Woods, who had been a member of a CWA local (Local 1110) while he worked for AT&T, was again working for a shop organized under CWA, but in a different local (Local 1100) (Local 1100). One of the major contentions between the parties in this litigation is whether defendant was ever a member of Local 1100. Plaintiff contends defendant was a member; defendant insists he was not.
Local 1100’s constitution provides that employees working at one of the job sites it represents could join the local by completing a membership application provided by Local 1100. The parent union’s constitution (CWA) additionally required potential members to pay an initiation fee as a condition for acquiring membership. Plaintiff has not produced a membership application signed by defendant nor proof that he paid an initiation fee to join CWA.

C. 1988 Job Transfer

In October 1988, defendant transferred to NYNEX where he worked as an intermediate computer operations clerk. Local 1100 represented the workers there also.
In June 1989, Local 1100 held an election among its members (including those at the NYNEX plant where defendant worked) to amend its constitution in a number of ways. One of the proposed changes made it a violation for members to cross a picket line during a strike and authorized the union to sanction workers who crossed a duly authorized picket line by fine, suspension, or expulsion. Previously, the local’s constitution did not contain such provisions. Plaintiff mailed ballots for this election to all its members. The parties agree that plaintiff mailed a ballot to defendant. Defendant acknowledges receiving the ballot, voting, and mailing the ballot in a preaddressed envelope directed to "Telephone Employees’ Organization, CWA Local 1100, 1 Hanson Place, Room 1118, Brooklyn, New York 11243”. This is Local 1100’s address. The voting membership approved the amendments.

D. The 1989 Strike

One month later, in July 1989, Local 1100 called a strike vote against NYNEX for a strike which would begin at the expiration of the then current collective bargaining agreement (Aug. 6, 1989). Defendant also received this ballot, voted, and mailed the ballot in a preaddressed envelope to the local’s office as before. Those voting approved the strike which began August 6, 1989 and ended December 3, 1989.
*36 Initially, defendant supported the strike by not going to work, and later joined the picket line on August 15 and 17, 1989, but, by letter dated September 20, 1989, informed Local 1100’s president (Gail Murcott) that he was resigning from the union. He sent the letter by regular first-class mail rather than certified mail, return receipt requested, as required by Local 1100’s constitution. Furthermore, the letter informed Ms. Murcott that he was resigning from Local 1110, the union to which he belonged in 1986 when he worked for AT&T. In addition, he mailed the resignation letter to Local 1110’s address (not Local 1100’s address). Plaintiff claims that defendant’s attempted resignation demonstrates he knew he belonged to a union, and that, by mailing the resignation to Local 1100’s president, he knew his union was Local 1100. Plaintiff also contends that it never received defendant’s resignation letter because he sent it to the wrong address, and that defendant therefore never effectively resigned from Local 1100. On September 21, 1989, defendant crossed Local 1100’s picket line and went to work on 48 occasions between September 21, 1989 and December 2, 1989.
At trial, defendant testified that he believed Local 1110 was still his union during this time because Local 1100 never gave him a membership application, a dues authorization form, nor a copy of its constitution and bylaws, nor did it post its official status on the employee bulletin board — all of which would have officially alerted him to the fact that Local 1100 was his union. Although he knew he belonged to "some” union, he testified that he believed this was Local 1110 because it was the only union he ever officially joined.
Plaintiff dismisses these arguments as disingenuous because, up to this point in time, defendant had previously (1) voted in the June 1989 election that amended Local 1100’s constitution to proscribe crossing an authorized Local 1100 picket line during a strike, (2) voted in the strike authorization vote called by Local 1100, and (3) mailed in his ballots for these elections in preaddressed envelopes addressed to Local 1100 at its appropriate address. In addition, plaintiff testified that NYNEX listed defendant as a union member on its payroll records and deducted union dues from his paycheck, and defendant never revoked the dues checkoff. Plaintiff’s officers concluded from these records that defendant was a member of Local 1100.
When the strike ended, Local 1100 charged defendant with violating six provisions of its constitution (art XI, § 1 [a]-[f]) *37 but the union’s officers acknowledged at the trial herein that these were not the sections that defendant violated. The specification of charges does charge defendant in general terms with "working without authorization during a properly-approved strike” against NYNEX, but it does not cite the precise constitutional provision that prohibits crossing an authorized picket line (art XI, § 1 [g]). Defendant argues that the specification of charges was defective and without effect while plaintiff union contends that the quoted language adequately notified defendant about the nature of the charges against him.

E. The Hearing And The Fine

By letter dated January 26, 1990, plaintiff informed defendant that a hearing would be held on March 21, 1990 on the allegation that he "worked for [NYNEX] without Union authorization during a properly called strike from August 6, 1989 to December 3, 1989.” Although the hearing was originally scheduled for the morning, plaintiff claims that it adjourned the hearing for the afternoon at defendant’s request. Defendant denies this. In any case, defendant did not appear at the hearing, and the union proceeded without him.
By decision dated April 9, 1990, the union informed defendant that the charges against him had been sustained, and that it had fined him $4,939.20 which represented the wages he received during the time he crossed the picket line plus $1 for each day he crossed the picket line. This is the fine which plaintiff seeks to reduce to judgment in this action. At trial, plaintiff testified that the only charge it sustained against defendant was the one relating to crossing the picket line. All others were dismissed.

F. Posthearing Events

Defendant did not appeal the fine to the union’s Executive Board within 30 days as provided by Local 1100’s constitution. Plaintiff union filed this action on August 27, 1990. After defendant filed his answer in this action, he also filed an unfair labor practice charge with the National Labor Relations Board (NLRB) on December 14, 1990 alleging that Local 1100 imposed the aforementioned fine "at a time that Woods was not a member of the Union”. In a separate detailed narrative explanation of his charge, however, defendant stated that he had been a member of Local 1100 until his resignation on September 20, 1989. At trial, plaintiff urged that this is *38 further evidence indicating that defendant had been a member of Local 1100, and that he knew it. Defendant testified that what he really meant was that he was a member of "some” union. Defendant further testified that an NLRB lawyer prepared his narrative and wrote in that defendant belonged to Local 1100, but defendant testified that he did not read this section carefully, and that it is incorrect.
By decision dated April 3, 1991, the NLRB refused to issue an unfair labor practice complaint against Local 1100 on the ground that defendant’s charge was untimely under section 10 (b) of the National Labor Relations Act which requires that the charge be filed within six months of the alleged incident. Therefore, it did not reach the merits of his charge against the union or his nonmembership claim. Defendant did not appeal this determination to the NLRB in Washington, D.C. as he was informed he could do.
Plaintiff insists that this court may not consider defendant’s nonmembership defense on the ground that the NLRB has exclusive jurisdiction to resolve labor disputes such as these, and State courts are preempted from entertaining defendant’s defense. Defendant contends that his nonmembership defense does not imply any of the policy concerns suggested by the preemption doctrine as applied to national labor policy, and that this court may hear it.
Although the parties have raised a number of other procedural and substantive issues, the key threshold issues are: (1) whether the Civil Court is preempted from considering and resolving defendant’s nonmembership defense, and (2) assuming this court is not preempted, whether defendant was ever a member of Local 1100. If he was not a member at the time he crossed the picket line, the fine is unenforceable. If he was a member, the fine could be enforced.
For the reasons that follow, I find that the Civil Court may hear defendant’s nonmembership defense, and that, based on this record, the union has not demonstrated that defendant ever joined Local 1100 in the manner required by its constitution. Accordingly, the complaint is dismissed, and the remaining issues raised by the parties are rendered moot. Defendant’s counterclaim based upon abuse of process is also dismissed.
DISCUSSION

A. The Preemption Issue

The United States Supreme Court has often observed that, in enacting the National Labor Relations Act (NLRA) (29 USC *39 § 151 et seq.), Congress "entrusted administration of the labor policy for the Nation to a centralized administrative agency [NLRB], armed with its own procedures, and equipped with its specialized knowledge and cumulative experience.” (San Diego Unions v Garmon, 359 US 236, 242 [1959].) In fashioning what has come to be known as the Garmon preemption doctrine, the Court reasoned that by designating the NLRB as the primary arbiter of national labor policy, Congress " 'evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid those diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies * * * A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.’ ” (Supra, at 242-243.) Accordingly, when it is clear or may be fairly assumed that the activities which a State purports to regulate are protected by section 7 of the NLRA or constitute unfair labor practices under section 8 of the Act, "due regard for the federal enactment requires that state jurisdiction must yield”. (Supra, at 244. ) Similarly, when an activity is arguably subject to section 7 or section 8 of the NLRA, the State courts "must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted.” (Supra, at 245. )
Nevertheless, the Court has been equally forceful in stating that this preemption doctrine does not, "as a matter of wooden logic” (Machinists v Gonzales, 356 US 617, 619 [1958]) preclude State court jurisdiction in every instance where a particular controversy "touches or concerns in any way the complex interrelationships between employees, employers, and unions; obviously much of this is left to the States.” (Motor Coach Empls. v Lockridge, 403 US 274, 289 [1971]; San Diego Unions v Garmon, supra, 359 US, at 243-244; Vaca v Sipes, 386 US 171, 180-181 [1967].)
In distinguishing between those labor disputes from which State courts are or are not preempted by the Garmon preemption rules, the Supreme Court has observed that "The critical inquiry * * * is not whether the State is enforcing a law relating specifically to labor relations or one of general appli *40 cation but whether the controversy presented to the state court is identical to * * * or different from * * * that which could have been, but was not, presented to the [NLRB].” (Emphasis added.) (Sears, Roebuck & Co. v Carpenters, 436 US 180, 197 [1978]; in accord, San Diego Unions v Garmon, supra, 359 US, at 243; Vaca v Sipes, supra, 386 US, at 180; Motor Coach Empls. v Lockridge, supra, 403 US, at 292; Belknap, Inc. v Hale, 463 US 491, 510 [1983].) Proper application of this test avoids one of the chief dangers which the Garmon preemption rules were intended to avoid, i.e., the conversion of State courts into alternative forums for the litigation of the same conduct which could and should be brought before the NLRB. (Belknap, Inc. v Hale, supra.)
Applying this approach, the Supreme Court has recognized several exceptions to Garmon State court preemption. Under two of these exceptions, State courts may regulate conduct that is of only peripheral concern to the NLRA, or that is "so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction [courts] [s]hould not infer that Congress had deprived the States of the power to act.” (San Diego Unions v Garmon, supra, 359 US, at 244 [emphasis added].)
With this in mind, the Supreme Court has held that State courts may hear libel claims regarding allegedly false and malicious statements made during the course of a labor dispute even though such statements were in themselves unfair labor practices adjudicable by the NLRB (Linn v Plant Guard Workers, 383 US 53 [1966]); State court actions alleging intentional infliction of emotional distress, even though a major part of the cause of action consisted of conduct (violence or the threat of violence) that was arguably an unfair labor practice (Farmer v Carpenters, 430 US 290 [1977]); State trespass actions challenging the location rather than the legality of a picket line (Sears, Roebuck & Co. v Carpenters, supra); State court damage actions alleging breach of the union’s duty of fair representation based upon its refusal to fully exhaust internal grievance procedures on behalf of a worker discharged for medical reasons (Vaca v Sipes, supra); and, State breach of contract and misrepresentation claims brought by strike replacement workers who were promised permanent employment when hired but were discharged after settlement of a strike and the return of the striking workers (Belknap, Inc. v Hale, supra).
The common thread harmonizing these decisions is the *41 conclusion that the issues and proofs to be litigated before the State courts in those cases (malicious libel, emotional distress, trespass, and breach of contract) were substantively different from the issues, proofs, and remedies which the NLRB would have considered regarding the same controversies. This fact convinced the Supreme Court that State court adjudications of these issues posed little or no threat to the goal of securing uniformity in the field of national labor relations policy.
This does not mean, however, that artful pleading will automatically insulate State court actions arising out of labor disputes from preemption. Merely labeling a claim as a State breach of contract, tort, or trespass action, in other words, is not decisive. The key inquiry is always whether the conduct or activity sought to be regulated (regardless of its remedial label) is within the NLRB’s exclusive province. (Motor Coach Empls. v Lockridge, supra, 403 US, at 292-293.)
Against this background, the Civil Court may entertain defendant’s nonmembership defense. Whether defendant was a member of plaintiff union at the time he crossed the picket line does not raise an issue that is either arguably protected or prohibited by the NLRA. This is "purely a contractual issue and merely a negative response to the Union’s affirmative burden of establishing that [defendant was a party] to the contract that the Union was trying to enforce”. (Communications Workers v Bridgett, 512 NE2d 195, 198 [Ind App 1987] [holding that State court had jurisdiction to hear workers’ defense of resignation from union in the context of union’s State court lawsuit seeking to collect fines for workers crossing picket line during strike].)
To assess defendant’s membership status in the union and the enforceability of the union’s fine against defendant, for example, this court needs only to look at the union’s constitution and bylaws since courts have consistently held that union membership is not a vested right but arises only when the requirements set forth in the union contract and bylaws are fully satisfied or substantially satisfied even though some ministerial formalities remain to be performed. (Agola v Hagner, 678 F Supp 988, 994 [ED NY 1987] [where nurses failed to apply for union membership or pay initiation fees or dues as required by union’s bylaws, they never became members of the union and were not entitled to strike benefits].) The resolution of this issue, therefore, rests upon the criteria for union membership established by plaintiff union’s constitution and bylaws. These issues involve " 'purely internal union *42 matters’ * * * a subject the [NLRA] leaves principally to other processes of law” (Motor Coach Empls. v Lockridge, supra, 403 US, at 296), and State courts may resolve them. (Machinists v Gonzales, supra [State court had power to award union member damages for lost wages and physical and mental suffering in State law breach of contract lawsuit alleging wrongful expulsion from union]; Communications Workers v Bridgett, supra, 512 NE2d, at 198 ["The issue of membership status vel non is not covered by sections 7 or 8 of the NLRA, and accordingly, not preempted by the doctrine of primary jurisdiction”].)
In contrast, the issue before the NLRB would be whether plaintiff union committed an unfair labor practice by fining a worker who was a member of the bargaining unit (the job site) but not a member of the union at the time he crossed the picket line. (Pattern Makers v National Labor Relations Bd., 473 US 95 [1985].) Indeed, this was the issue defendant raised in his aforementioned complaint to the NLRB. Although the membership question is relevant to both the State court and NLRB inquiries, this court would not be concerned with whether the union’s conduct violated some provision of the NLRA; rather, its distinct inquiry would be whether defendant met the criteria for membership stated in the union contract and bylaws. As noted, this is the type of question which the Supreme Court has determined is peripheral to the concerns of the Garmon preemption rules. (Machinists v Gonzales, supra; Motor Coach Empls. v Lockridge, supra; Belknap, Inc. v Hale, supra.)
For these reasons, I find that the Civil Court has jurisdiction to hear defendant’s nonmembership defense.

B. Defendant’s Union Membership

Plaintiff has failed to demonstrate by a preponderance of the evidence that defendant was a member of Local 1100 when he crossed its picket line.
Plaintiff’s proofs regarding defendant’s union membership are not conclusive. It has not produced a Local 1100 membership application signed by defendant nor has it shown that defendant ever paid the initiation fee required by CWA’s constitution as a condition for membership.
Alternatively, had defendant been a member of Local 221 at the time that this union local affiliated with CWA, plaintiff could have argued that Local 1100 inherited Local 221’s membership following the affiliation election and execution of *43 the successorship agreement between Locals 221 and 1100. (Communications Workers v Jefferson, 289 NLRB No. 148, supra.) But plaintiff has not shown that this was the case. Although defendant completed a dues authorization card in 1987 when he transferred to the New York Telephone job site and where Local 221 represented the workers, this card by its plain terms indicated that it was not a membership application and, at best, indicated only an intention to join the union.
Similarly, plaintiff’s testimony that it inferred defendant’s membership in Local 1100 from NYNEX’s payroll records is unconvincing. It is well settled that union membership may not be conferred in violation of union protocol as stated in its constitution and bylaws. (Agola v Hagner, supra, at 993; United Nuclear Corp. v National Labor Relations Bd., 340 F2d 133, 137 [1st Cir 1965] [union officers acting unilaterally and ultra vires cannot by their own action create members in ways not authorized by the body of the membership or by the constitution it had adopted].) In this case, plaintiff’s constitution required completion of a membership application and payment of an initiation fee as a condition for membership, but plaintiff has not demonstrated that defendant completed these prerequisites.
Further, the fact that defendant may have voted in union elections or that he acted or was treated as a union member does not establish membership. As the court noted in United Nuclear Corp. v National Labor Relations Bd., there is a "well-recognized distinction between membership, on the one hand, and, on the other hand, the privilege accorded to nonmembers of exercising certain rights usually associated with membership”. (Supra, at 137.) Consequently, "unless a statute or special rule of law otherwise provides, the fact of voting is not an automatic proof of membership. And we know of no applicable statute, rule of law, or custom equivalent to law which in labor unions homogenizes candidates for members who have paid initiation fees, participated in meetings, and been allowed to vote with members who have actually been initiated, admitted, and completed all formalities. Nor does the [NLRB] suggest that there is any such rule, statutory, decisional, or customary.” (Supra.) And, just as union membership status cannot be conferred by unilateral decisions of union officials which do not conform to procedures formally adopted by the general membership, neither can membership be conferred by estoppel nor implied contract theory as plaintiff argues here. (Agola v Hagner, supra, at 994.)
*44 In this case plaintiff has not produced a membership application for defendant, nor proof that he paid a membership initiation fee, nor other correspondence or documentary proofs demonstrating that defendant was formally admitted to membership in Local 1100 (or its predecessor Local 221) as required by the applicable constitutions and bylaws at the time that he crossed the picket line. Accordingly, plaintiff union has not demonstrated that defendant was a member of the union at the time he crossed the picket line. As a nonmember, defendant was not subject to the union rules prohibiting him from crossing the picket line during a strike and requiring that he exhaust internal union review procedures challenging the disciplinary fine which is the subject of this action.
It follows that plaintiff could not fine defendant for crossing the picket line, and that its complaint must be dismissed. (Pattern Makers v National Labor Relations Bd., supra.)